# EXHIBIT A

**BARNES&THORNBURG**LLP

One North Wacker Drive, Suite 4400
Chicago, IL 60606-2833 U.S.A.
(312) 357-1313
Fax (312) 759-5646

www.btlaw.com

Brian W. Lewis
(312) 214-5608
brian.lewis@btlaw.com

July 27, 2017

**Via e-mail, first-class and certified mail return receipt requested**

Timothy L. Stark
Melisa D. Stark
Wildlife in Need and Wildlife in Deed, Inc.
3320 Jack Teeple Road
Charlestown, IN 47111
wildlifeinneed@aol.com

The Honorable Ryan Zinke
Secretary of the Interior
U.S. Department of the Interior
1849 C St. N.W.
Washington, DC 20240
secretary_zinke@ios.doi.gov

Jim Kurth
Acting Director, U.S. Fish & Wildlife Service
1849 C St. N.W., Rm. 3331
Washington, DC 20240
jim_kurth@fws.gov

Re: **Notice of Intent to File Citizen Suit Pursuant to the Endangered Species Act Against Wildlife in Need and Wildlife In Deed, Inc. and Tim and Melisa Stark**

This letter constitutes notice, pursuant to Section 11 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(2)(A)(i), that People for the Ethical Treatment of Animals, Inc. ("PETA") intends to file suit after sixty days against Wildlife in Need and Wildlife in Deed, Inc., an Indiana corporation located at 3320 Jack Teeple Road, Charlestown, Indiana, 47111, Timothy L. Stark as an individual and in his capacity as the president and principal of Wildlife in Need and Wildlife in Deed, Inc., and Melisa D. Stark as an individual and in her capacity as the secretary and treasurer of Wildlife in Need and Wildlife in Deed, Inc., and the persons primarily responsible for caring for the animals described herein (collectively, "Wildlife in Need"), in federal district court pursuant to 16 U.S.C. § 1540(g)(1)(A) for chronic and ongoing violations of the ESA, 16 U.S.C. § 1538(a)(1)(B), (G), and its implementing regulation, 50 C.F.R. § 17.21, to enjoin the facility's ongoing "take" of tigers, lions, and hybrids thereof (collectively, "Big Cats").

July 27, 2017
Page 2

Should Wildlife in Need elect to remedy the ESA violations described below and avoid litigation, it should immediately contact the undersigned attorney to effectuate the transfer of these protected Big Cats to reputable sanctuaries within the sixty-day notice period. PETA will secure, arrange, and pay for the placement, transport, and veterinary care necessary for the relocation of these animals to reputable sanctuaries, where they can express species-typical behaviors in safe, socially appropriate, and enriching environments, in exchange for an agreement that Wildlife in Need shall not own, possess, buy, sell, transfer, transport, or in any way handle or have contact with Big Cats in perpetuity.

I.  The Endangered Species Act

The ESA prohibits the "take" of endangered and most threatened species within the United States.[1] Tigers are listed as "endangered" under the ESA.[2] Lions are listed as either "endangered" or "threatened" depending upon their subspecies—the subspecies *Panthera leo leo* is listed as "endangered" and the subspecies *Panthera leo melanochaita* is listed as "threatened"—both to which the "take" prohibition applies.[3]

Congress defined "take" "in the "broadest possible" manner to include every conceivable way in which a person can take or attempt to take any fish or wildlife."[4] "Take" is defined by statute to mean "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."[5]

"Harm" and "harass" are defined by regulation. "Harm" is "an act which actually kills or injures wildlife" including "by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering."[6] "Harass" is "an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering."[7] "Wound" is not defined by statute or regulation. Its dictionary definition, as a verb, is "to cause a wound to or in," or "to inflict a wound"; as a noun, wound is defined as "an injury to the body

---

[1] *See* 16 U.S.C. § 1538(a)(1)(B), (G); 50 C.F.R. §§ 17.21.
[2] 50 C.F.R. § 17.11(h).
[3] *Id.* § 17.11(h); *see also id.* § 17.40(r) (members of the threatened subspecies *Panthera leo melanochaita* are subject to the protections of a special rule that incorporates the take prohibition).
[4] *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 704–05 (1995) (citing S. Rep. No. 93-307, p. 7 (1973); U.S. Code Cong. & Admin. News 1973, pp. 2989, 2995); *see also* H.R. Rep. No. 93-412, p. 154, 150 (1973) ("the broadest possible terms" were used to define restrictions on takings and to include "harassment, whether intentional or not").
[5] 16 U.S.C. § 1532(19).
[6] 50 C.F.R. § 17.3.
[7] *Id.*

July 27, 2017
Page 3

(as from violence, accident, or surgery) that typically involves laceration or breaking of a membrane (such as the skin) and usually damage to underlying tissues."[8]

The United States Fish and Wildlife Service has denied Wildlife in Need's captive-bred wildlife permit application and Wildlife in Need does not possess any permit to "take" Big Cats. Yet, as described below, Wildlife in Need confines and maintains Big Cats in conditions that "harm," "harass," and "wound" them in violation of Section 9 of the ESA[9] and its implementing regulations,[10] and thereby also unlawfully possesses them[11] in further violation of the Act.

## II. Wildlife in Need Takes Big Cats in Violation of the ESA

Wildlife in Need takes protected Big Cats by prematurely removing them from their mothers or acquiring them from others who have done so, declawing them, forcing them to engage in encounters with the public, exposing them to rough handling, and confining them in conditions that fail to meet their social, physical, and psychological needs, all of which results in or creates a likelihood of injury to the animals.[12]

### A. Declawing

Wildlife in Need routinely declaws at least some of the Big Cats it possesses, which harms, wounds, and harasses the animals within the meaning of the ESA. Wildlife in Need lacerates the skin and tissue of some of these animals in an illegal and indefensible procedure that causes them severe injury and interferes with their normal behavior in a way that is likely to result in long-term, chronic injury.

To declaw a Big Cat, the animal's toes are amputated at the last joint, a procedure that will result in permanent lameness, gait abnormalities, abnormal standing conformation, arthritis, or other long-term complications, and cause pain in standing or walking. Complications from declawing may even cause death, as admitted by Wildlife in Need's attending veterinarian, who stated during a recent U.S. Department of Agriculture (USDA) inspection that a tiger at the facility has a fifty percent chance of dying from complications resulting from the procedure.[13]

---

[8] "Wound." Merriam-Webster.com. https://www.merriam-webster.com/dictionary/wound (June 1, 2017).
[9] 16 U.S.C. § 1538(a)(1)(B), (G).
[10] 50 C.F.R. §§ 17.21(c)(1); 17.40(r).
[11] 50 C.F.R. § 17.21(d)(1).
[12] This conduct is well documented, including through reports written by inspectors with the Animal Plant and Health Inspection Service, the division of the United States Department of Agriculture ("USDA") that administers the Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2131–59.
[13] USDA Inspection Report, Timothy Stark (March 17, 2017).

BARNES&THORNBURG LLP

July 27, 2017
Page 4

Declawing Big Cats is illegal because it "can cause ongoing pain, discomfort, or other pathological conditions in the animals."[14] The American Veterinary Medical Association "condemns" the declawing of Big Cats because the "pain and suffering associated with declawing may be exacerbated in wild and exotic felines" and "welfare concerns associated with declawing are worsened for [Big Cat] populations."[15] With limited exception, there is "no justification for performing the procedure in this population of cats."[16] Despite this, Wildlife in Need has routinely declawed protected Big Cats, causing them wounds and injuries and putting them at risk of death, chronic pain, discomfort, and other physical and psychological health problems.

### B. Rough Handling, Public Contact, and Maternal Separation

For captive animals such as Big Cats, "forced proximity to or contact with humans can be deleterious to animal well-being."[17] Yet Wildlife in Need routinely exhibits Big Cat cubs at its "Tiger Baby Playtime" events, charging an admission fee and an optional additional photo opportunity fee, and bringing Big Cat cubs into direct contact with the public in a room full of approximately thirty members of the public. Using Big Cat cubs in public-handling sessions constitutes a "take" and contravenes generally accepted husbandry practices.[18] Such conduct harms and harasses the animals in violation of the ESA by physically abusing them and causing severe disruption to their normal behavior patterns, including feeding and sheltering, so as to create the likelihood of injury.

Tim Stark or other Wildlife in Need staffers or volunteers hold cubs by the arms, shake their bodies or heads, bare teeth and growl at them, and generally agitate them and cause them distress. Stark has gone so far as to instruct customers to hit the animals if they express distress or react negatively to public handling and to direct employees and volunteers to hit cubs with

---

[14] USDA Animal Care Policy Manual, Policy #3, Veterinary Care (Mar. 14, 2014) https://www.aphis.usda.gov/animal_welfare/downloads/Animal%20Care%20Policy%20Manual.pdf. For more than a decade the USDA has recognized that declawing violates the AWA because it "can cause considerable pain and discomfort to the animal and may result in chronic health problems." USDA, Animal Care, Information Sheet on Declawing and Tooth Removal (Aug. 2006), https://www.aphis.usda.gov/animal_welfare/downloads/big_cat/declaw_tooth.pdf. The ESA and AWA are separate statutory schemes that apply concurrently and in full to captive members of endangered species. They are distinct but complementary statutes, each with its own scope, purpose, and enforcement mechanism.
[15] AVMA Executive Board, *AVMA now condemns declawing wild and exotic cats*, Dec. 31, 2012, https://www.avma.org/news/javmanews/pages/130115l.aspx.
[16] *Id.*
[17] Kathleen Morgan & Chris Tromborg, *Sources of Stress in Captivity*, 102 Applied Animal Behav. Sci. 262, 280 (2007); *see also* Matt W. Hayward & Gina J. Hayward, *The Impact of Tourists on Lion* Panthera Leo *Behaviour, Stress and Energetics*, 54 Acta Theriologica 219 (2009) (finding that lions were significantly more likely to exhibit disturbance-indicating behaviors and signs of stress when tourists were present).
[18] Global Federation of Animal Sanctuaries, *Standards for Felid Sanctuaries*, at § P-6.b (July 2013).

BARNES&THORNBURG LLP

July 27, 2017
Page 5

riding crops.[19] This conduct significantly disrupts the animals' normal behavioral patterns by making it impossible for them to hide or otherwise seek shelter from fear-inducing stimuli, and not only causes them psychological injury but is so distressing that it also places the animals at significant risk for physical injury.

The young cubs used by Wildlife in Need are at a critical learning juncture, and the trauma and permanent chronic distress caused by these "Playtime" events can activate genes that can be passed in turn to offspring, potentially affecting Big Cats and their young for the rest of their lives. These species are incapable of understanding the negative punishment of being hit by human hands or struck by riding crops, and cannot know what behavior is expected of them by their human handlers.

Additionally, the constant use of these cubs in "Playtime" events without periods of sufficient rest in between hourly exhibitions exhausts the animals, who often appear lethargic and attempt to sleep even as members of the public surround them and handle them. This creates a likelihood of injury by denying sleep and rest, which is essential to natural development and physical health, thereby harassing and annoying the animals in violation of the ESA. Wildlife in Need also allows public contact with Big Cats who have open wounds, creating a risk of injury by allowing bacterial transmission from roomfuls of people who handle the animals, thereby further harassing them in violation of the ESA.

These events continue, with new cubs being born or arriving at Wildlife in Need to replace older cubs as they age and grow larger. The cubs are separated from their mothers as infants, well before they are naturally weaned, causing distress to the cubs and their mothers, and other physical and psychological health problems. Maternal separation alters the cubs' normal feeding behaviors and other natural behaviors that, had they been allowed to remain with their mothers, the cubs would have learned from their mothers.

### C. Conditions of Confinement and Abnormal Behaviors

Wildlife in Need confines adult and juvenile Big Cats to small, virtually barren enclosures that lack proper enrichment and other opportunities engage in species-typical behaviors. In doing so, Wildlife in Need physically and psychologically harms these animals, and deprives them of the ability to engage in normal behavioral patterns, creating the likelihood that the Big Cats will suffer further injury, thereby taking them in violation of the ESA.

In captivity, tigers are commonly unable to roam the vast and varied territories they evolved to occupy. Since captive conditions that thwart carnivores' hunting prospects appear to cause carnivores like tigers to suffer stress,[20] reputable facilities develop enrichment plans designed to allow the animals to express natural feeding and hunting behaviors.[21] These plans aim to provide

---

[19] *See, e.g.*, USDA Inspection Report, Timothy Stark (Aug. 20, 2014); *see also* USDA Inspection Report, Timothy Stark (Sept. 15, 2015).

[20] Morgan & Tromborg, *supra* n.17, at 284.

[21] Leticia S. Resende et al., *The Influence of Feeding Enrichment on the Behavior of Small Felids (Carnivora: Felidae) in Captivity*, 26 Zoologia 601 (2009).

stimulating physical and mental activities by introducing a variety of environmental enrichment items such as bones or deceased whole prey items for feeding, pools for swimming, toys that are kept novel by changing them regularly, scratch logs, different substrates to investigate and lie in, the introduction of new smells, enclosure rotations, and adequate space to run. According to the Association of Zoos and Aquariums ("AZA"), the nation's premier zoological accrediting organization, the typical tiger exhibit is between 2,500 and 10,000 square feet, with an average of 5,500 square feet.[22]

Meeting the physical and psychological needs of captive lions requires providing them with the opportunity to socialize with compatible lions, and providing them with necessary environmental enrichment. The AZA recommends that lions be provided with "large spacious enclosures designed to encourage species-appropriate behaviors such as resting, walking, hunting, stalking, grooming, playing, breeding, etc."[23] All enclosures should allow lions to "retreat from conspecifics through the use of visual barriers, such as rock outcroppings, hills, and foliage, without limiting an animal's access to food, water, heat, or shade."[24] In addition to providing social privacy, enclosures should include "various substrates, surfaces to mark, deadfall for scratching, and other aspects in their enclosure that will change their pathways and create complex behavioral opportunities."[25] According to the AZA's 2010 Lion Species Survival Plan Space Survey, the majority of lion exhibits are over 10,000 square feet, which "should be considered the minimum size for new exhibits."[26]

Wildlife in Need does not provide its Big Cats with appropriate, natural, and complex enclosures and varied enrichment. Instead, Wildlife in Need confines them to small, virtually barren enclosures, with inappropriate substrates and little to no variety, privacy, or choice. The barren environment and lack of enrichment at Wildlife in Need harasses the Big Cats by significantly disrupting their ability to engage in important natural behaviors such as swimming, stalking, and predation. Likewise, this deprivation causes ongoing harm to the animals' physical and psychological well-being.[27] Indeed, Big Cats in sterile environments like the one at Wildlife in Need experience long periods of inactivity or mindless activity, which results in permanent long-term changes to the body, brain, neural, and endocrine systems. Psychological distress can often leave tigers with higher blood cortisol levels, which can trigger displacement behavior, apathy, learned helplessness, and even severe capture myopathy. Enrichment is necessary to deter harmful behaviors like self-mutilation, and stereotypical behaviors[28] such as pacing, which has been observed in Big Cats at Wildlife in Need. Harmful behaviors such as self-mutilation

---

[22] Ass'n of Zoos & Aquariums, *Tiger Care Manual* 12 (2012).
[23] Ass'n of Zoos & Aquariums, *Lion Care Manual* 18 (2012).
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *See* Morgan & Tromborg, *supra* n.17, at 264; *see also* Monika S. Szokalski et al., *Enrichment for Captive Tigers* (Panthera tigris): *Current Knowledge and Future Directions*, 139 Applied Animal Behav. Sci. 1 (2012).
[28] Stereotypies, which are commonly recognized as a sign of psychological distress, are identified by the lack of function for the behavior.

and pacing, in addition to evidencing psychological distress, can lead to other physical injuries, especially when the animals pace on inappropriate substrates. In the wild or in a reputable sanctuary, a Big Cat would have the ability to exercise, explore, and engage in other species-typical behaviors.

By confining Big Cats in enclosures that do not allow the animals to exercise choice, experience autonomy, or express natural behaviors, and by denying the animals the psychological stimulation fundamental to their physical, social, and psychological well-being, Wildlife in Need fails to satisfy generally accepted standards of care and causes the animals physical and psychological injuries by significantly disrupting the animals' normal behavioral patterns and thereby takes the Big Cats by harming and harassing them in violation of the ESA.[29]

Additionally, the USDA has cited Wildlife in Need for failing to provide these species with appropriate shelter for cold winter weather.[30] According to a USDA facility inspection report, "The lack of wind breaks, or shelters that protect the animals from the rain, sleet, direct sun, and snow can cause possible health issues and discomfort to the . . . animals, that in nature would be able to find appropriate shelter from the elements if able."[31] The inspector noted that snow and rain was blowing into the enclosure and that the temperature had been between seven and twenty-one degrees Fahrenheit for the week prior to the inspection, with two to three inches of snow on the ground during the inspection.[32]

Failure to provide Big Cats with adequate protection from the elements creates a likelihood of injury, including hypothermia and illness, by denying them the ability to engage in normal behaviors such as hiding, resting, and sheltering without exposure to inclement weather, or choosing to find a more suitable location, thereby harassing them in violation of the ESA.

\*  \*  \*

The conditions set forth herein violate the ESA's prohibition on the "take" of the Big Cats. Unless the violations described herein cease immediately, PETA intends to file suit against Wildlife in Need under the ESA after the expiration of sixty days. Pursuant to the ESA, PETA will seek declaratory relief and an injunction against continued violations, including, but not limited to, requesting that the court order the transfer of the Big Cats to reputable sanctuaries, as well as attorney's fees and litigation costs.

In the interim, PETA demands that Wildlife in Need and Mr. and Mrs. Stark agree to enter a preservation order in this matter containing the following terms: (i) Wildlife in Need and Mr. and

---

[29] See 16 U.S.C. § 1538(a)(1)(B), (G); 50 C.F.R. § 17.11(h), 17.21(c)(1).
[30] See USDA Inspection Report, Timothy Stark (Jan. 20, 2016).
[31] Id.
[32] Id.

Mrs. Stark agree to preserve and not destroy any and all animals in their possession; (ii) Wildlife in Need and Mr. and Mrs. Stark agree to preserve and not destroy any and all evidence, documents, tangible items and electronic data that are the subject of or relevant to the violations addressed in this letter; and (iii) Wildlife in Need and Mr. and Mrs. Stark agree to permit an on-site inspection of the property, within thirty days, to confirm that all of the Big Cats at Wildlife in Need are being preserved. **Please confirm by 5 p.m. (ET) on August 3, 2017, that Wildlife in Need and Mr. and Mrs. Stark agree to enter into a preservation order as described herein. If I do not hear from you by then, PETA will have no alternative but to seek appropriate legal relief with the court.**

During the sixty-day notice period, PETA is willing to discuss a mutually agreeable remedy for the violations addressed in this letter. Specifically, PETA is willing to bear all costs associated with relocating the Big Cats to reputable sanctuaries, in exchange for an agreement that Wildlife in Need shall not own, possess, buy, sell, transfer, transport, or in any way handle or have contact with Big Cats in perpetuity. If Wildlife in Need wishes to pursue this remedy and avoid litigation, please contact me directly. You can reach me by phone at (312) 214-5608 or by e-mail at brian.lewis@btlaw.com in order to facilitate placement and to confirm your agreement with the preservation order.

Very truly yours,

Brian W. Lewis

BWL/kl