## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

PEOPLE FOR THE ETHICAL     )
TREATMENT OF ANIMALS, INC.,   )
                                 )
     Plaintiff,                    )
                                   )     Case No. CIV-21-0671-F
-vs-                                )
                                   )
JEFFREY L. LOWE,          )
                                   )
     Defendant.

## ORDER

Plaintiff, People for the Ethical Treatment of Animals, Inc. (PETA), moves for summary judgment against defendant Jeffrey L. Lowe.  Doc. no. 406 (motion), 407 (brief).  Mr. Lowe filed a response brief, objecting to the motion.  Doc. no. 435.  PETA filed a reply brief.  Doc. no. 438.

For the reasons stated below, the motion will be denied.

### Procedural Background

The motion was filed in the United States District Court for the Southern District of Indiana.  On July 1, 2021, that court, having entered summary judgment in favor of PETA on claims alleged against Timothy Stark, Melisa Lane (formerly Stark), and Wildlife in Need and Wildlife in Deed, Inc. (collectively, the WIN Defendants), transferred this case to this district.  Doc. no. 451.  At this point, the only claims which remain for adjudication are the claims alleged by PETA against Lowe.  Those claims are alleged in Counts II and III of the "First Amended Complaint for Injunctive and Other Relief." Doc. no. 285.

At the time the response brief was filed, Lowe was represented by counsel, Daniel J. Card.  Mr. Card was later permitted to withdraw from his representation of

Lowe on the condition that documents may continue to be served on Card for forwarding to Lowe until such time as Lowe appears by other counsel or appears pro se.  Doc. no. 459.[1]

## Standards

Under Rule 56, Fed. R. Civ. P., summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant.  United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial.  Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

## Background Facts

The following background facts are established on this record.

---

[1] That order also directed Lowe to obtain replacement counsel, with such counsel to file an entry of appearance within fourteen days.  Alternatively, the order provided Lowe could enter a pro se entry of appearance within fourteen days.  To date, Lowe has done neither.  Lowe's non-compliance will be addressed in a separate order and does not impact PETA's motion for summary judgment.

The big cats in question with respect to the claims against Lowe are four lions: Amelia, Kahari (deceased), Leo and Nala.  *See*, doc. no. 398 (chart, p. 2, animals numbers 23-26).

On May 14, 2019, while this action was pending and despite orders directing the WIN defendants to preserve all evidence relating to their animals and preliminarily enjoining the WIN defendants from (among other things) prematurely separating big cat cubs from their mothers, Stark transferred title to these four lions to Lowe.  Doc. no. 388, pp. 2-3.  Text messages between Stark and Lowe indicated they had planned on combining their inventory and starting a joint zoo in Oklahoma.  *Id*. at 3.  These facts prompted the Indiana court to issue an order clarifying its previous orders and directing the WIN defendants not to transfer any more big cats away from WIN.  *Id*. at p. 3.  Despite that clarification order, the four lions in question here, which had been born on Stark's property in late July and early August of 2019 (doc. no. 260), were moved to Lowe's facility in Oklahoma.  Doc. no. 388, p. 3.

On September 22, 2020, the Indiana court was notified that, pursuant to its orders, three of these four big cats, Amelia, Leo and Nala (Kahari having died by then), had been moved from Oklahoma to The Wild Animal Sanctuary.  Doc. no. 422.  Accordingly, none of the four lions remain in Lowe's custody.

<u>Discussion</u>

The allegations against Lowe, and the reasons for which Lowe was added to this action as a defendant make clear that PETA's claims against Lowe relate only to the four lions identified as Amelia, Leo, Nala and Kahari.  PETA does not argue otherwise.  *See*, doc. no. 438, p. 1 (describing PETA's claims as related to these four lions).  Thus, when PETA's motion refers to "Big Cats" taken by Mr. Lowe, PETA refers to these four lions.  It is within that context that PETA's motion for summary

judgment, which was filed before the four cats were moved to a sanctuary, seeks the following relief.

> PETA requests this Court grant summary judgment on Counts Two and Three of its Amended Complaint with respect to Mr. Lowe by <u>declaring</u> that Mr. Lowe violated and continues to violate the ESA and its implementing regulations by unlawfully taking Big Cats and possessing unlawfully taken Big Cats. PETA also requests a permanent injunction <u>enjoining</u> Mr. Lowe from further unlawful takes against these four lions.

Doc. no. 407, p. 29 (emphasis added).[2]

Taking the requested declaratory relief first:  as the above passage shows, PETA asks the court to declare that Lowe "violated and continues to violate the ESA and its implementing regulations" by taking and continuing to possess the four lions. The four lions, however, are no longer in Lowe's possession.  Accordingly, there is no longer any basis for the court to declare that Lowe "continues to violate" the ESA and its implementing regulations in relation to these lions.  As a result, the only request for declaratory relief which remains in play is PETA's request for a declaration that Lowe's past conduct with respect to the four lions violated the ESA and its implementing regulations.

As for the requested injunctive relief:  PETA asks the court to enjoin Lowe from further unlawful acts against the four lions.  As the four lions are no longer in Lowe's possession, there is no longer any basis for such an injunction.  Although PETA's brief is not entirely clear on this point, it appears to recognize that any request for injunctive relief against Lowe is moot.  PETA's moving brief (doc. no. 407, p. 29, n.16) indicates that given the Indiana court's holding, before the motion was filed, that the four lions then in Lowe's possession would be moved to a sanctuary per court order, "PETA considers [the relinquishment issue] moot and <u>will</u>

---

[2] Briefs are referenced by their original (not ecf) page numbers unless otherwise indicated.

forego more expansive requests for permanent injunctive relief with respect to Mr. Lowe at this time." *Id*. (emphasis added).

The upshot is that the only relief requested in PETA's motion which the court could grant at this stage is a declaration that Lowe's conduct with respect to the four lions violated (past tense) the ESA and its implementing regulations. The next question is whether PETA has carried its burden to show there is no genuine dispute that Lowe's alleged past conduct with respect to the four lions violated the ESA and its implementing regulations.

Lowe's relevant past conduct begins with allegations that he took title to and professed ownership of the four lions, eventually taking physical possession of the lions and prematurely separating these lion cubs from their mothers in violation of the ESA. With respect to how Lowe came to possess the lions, PETA argues and presents evidence to show that Lowe accepted the four lion cubs (who were then only days-old) from Stark on August 12, 2019, and that Lowe then kept and raised these four lions. Doc. no. 407, proposed undisputed fact (UMF) No. 1. While Lowe does not directly dispute these facts (only denying this fact "as phrased"), he argues and presents evidence to show that Stark is the person who separated these cubs from their mother, and that Lowe had no choice but to accept the lions when Stark presented them to him. Lowe testified that Stark brought the cubs to Lowe's property uninvited, and said, "Here, take care of these." Doc. no. 435, p. 1, response to UMF No. 1, citing doc. no. 435-1, p. 7. This testimony could also support an inference that, contrary to the PETA's contentions, Stark and Lowe were not acting together in a scheme to deprive the Indiana court of jurisdiction over the four lions.

As for Lowe's continued possession of the lions after Stark purportedly presented the cubs to him, Lowe admits he raised the cubs from the time Stark dropped them off, but he testified that he refused to give the cubs back to Stark once he learned how Stark treats animals. *Id.*, citing doc. no. 435-1, p. 35.

At this stage, the court credits Lowe's testimony regarding how he came to possess the four lions. This testimony reveals a genuine dispute over this issue, which, in addition to Lowe's alleged acquisition of ownership (title) of the four lions, are the two acts by Lowe described with specificity in the first amended complaint. PETA's motion does not directly address the facts surrounding Lowe's assertion of ownership of the four lions.

PETA has not carried its burden to show there are no genuine issues of fact with respect to its request for a summary declaration that Lowe's acts related to the premature separation of the four lions from their mothers, Lowe's acts related to how he came to possess the four lions, and Lowe's assertion of ownership over the four lions, violated the ESA or the implementing regulations.

As for whether PETA has shown there are any undisputed issues concerning *other* past violations by Lowe of the ESA or its implanting regulations which could potentially be carved out for narrowly-tailored declaratory relief at this stage, the court declines to parse the record further. These potential issues relate to Lowe's alleged mistreatment of the four lions while they were in his possession, including subjects such as the lions' diet, veterinary care, protection from fly-strike, protection from the public, and protection from COVID-19. Lowe has offered arguments and his own deposition testimony in an effort to dispute PETA's contentions that his care of the lions violated the ESA or its implementing regulations. Moreover, even if some of these sub-issues could be addressed at this stage, they are fact-laden issues best determined with the benefit of a full evidentiary record.

Accordingly, PETA's motion for summary judgment will be denied.

Finally, the court addresses one more point raised by Lowe's objections to the motion for summary judgment. The court does so because this objection, while not among the court's reasons for denying summary judgment to PETA, could potentially impact the issues for trial and should be clarified.

The issue concerns Lowe's position that the issues addressed in PETA's motion for summary judgment bear no relationship to the claims actually alleged against Lowe and have nothing to do with why Lowe was added to this action. Doc. no. 435, p. 1. Lowe is correct that PETA's motion for summary judgment focuses on Lowe's care and handling of the lions after they came into his possession, despite the fact that the first amended complaint describes none of that conduct. Judge Young's transfer order refers to this possible concern. Doc. no. 451, pp. 5-6. He notes that the reasons PETA was permitted to bring Lowe into the action are narrower than the expansive arguments about Lowe's mistreatment of the four lions which are made in PETA's motion.

Having carefully considered Lowe's position on this issue as well as Judge Young's statements in his transfer order, the court rejects Lowe's argument about the lack of fit between the claims actually alleged against Lowe and the claims which PETA apparently now seeks to press in this action, for three reasons.

First, the first amended complaint and the record of proceedings before Judge Young make clear that Lowe was brought into this action (long past the deadline for new parties)[3] based on concerns that he was acting, with Stark, to avoid the court's jurisdiction over the four lions so as to deny any relief to PETA with respect to these animals. The obvious purpose of PETA asking the Southern District of Indiana to assert jurisdiction over the WIN defendants' animals via PETA's filing of this action was to ensure appropriate treatment of those animals, which include the four lions Lowe later came to possess. Accordingly, issues regarding Lowe's alleged mistreatment of the four lions during the time he possessed them come within the purposes for which the court permitted Lowe to be added as a defendant.

---

[3] The deadline was September 7, 2018. Doc. no. 116, p. 3. The first amended complaint which added Lowe was not filed until January 29, 2020. Doc. no 285.

Second, given the broad definition of "take" as used in the ESA and the broad definition of "harm" as defined in the implementing regulations, both of which definitions are set out in the first amended complaint (doc. no. 285, ¶¶ 23-24), it is appropriate to construe the claims against Lowe as reaching Lowe's treatment of the four lions during the time he possessed them.

Third, language in counts one and two (the two counts alleged against Lowe) potentially covers Lowe's treatment of the four lions while he had them.  Doc. no. 285, ¶¶ 106, 112.  While that language is broad and not specific, it would have been impossible for PETA to allege details of misconduct by Lowe of which PETA was unaware, or which had not yet taken place, when the first amended complaint was filed.

Accordingly, the claims alleged against Lowe are properly construed as including PETA's contentions about Lowe's care and treatment of the four lions while they were in his possession.

Conclusion

After careful consideration, PETA's motion for summary judgment is **DENIED**.   Based on Mr. Card's ongoing obligations under the court's prior order (doc. no. 459), he is **DIRECTED** to promptly forward this order to Lowe and to file a certificate of service.

IT IS SO ORDERED this 27th day of September, 2021.


_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE


21-0671p005.docx