# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

PEOPLE FOR THE ETHICAL ) \
TREATMENT OF ANIMALS, ) \
INC., ) \
                               Plaintiff, ) \
                                    ) Case No. CIV-21-0671-F \
v. ) \
JEFFREY L. LOWE, ) \
                              Defendant. )

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, People for the Ethical Treatment of Animals, Inc. (PETA), brings this action against Defendant Jeffrey L. Lowe (Lowe) under the citizen suit provision of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g). The action was originally commenced in the United States District Court for the Southern District of Indiana. On July 1, 2021, the Indiana court transferred the action to this court pursuant to 28 U.S.C. § 1404(a), after it entered a final judgment, pursuant to Rule 54(b), Fed. R. Civ. P., with respect to PETA's claims under the ESA against Lowe's co-defendants.[1]

The claims against Lowe are set forth in Count II and Count III of the First Amended Complaint for Injunctive and Other Relief (first amended complaint), doc. no. 285, at 27-28, ¶¶ 104-113. In Count II, PETA alleges that Lowe has violated and continues to violate the ESA, 16 U.S.C. § 1538(a)(1)(B), (G), and its implementing regulations, 50 C.F.R. §§ 17.21, 17.31(a), by taking protected species,

---

[1] Lowe's co-defendants were Timothy Stark, Melisa Lane (formerly Stark), Wildlife in Need and Wildlife in Deed, Inc.

within the meaning of the ESA, without a permit. In Count III, PETA alleges that Lowe has violated and continues to violate the ESA, 16 U.S.C. § 1538(a)(1)(D), (G) and its implementing regulations, 50 C.F.R. §§ 17.21(d), 17.31(a), by possessing and continuing to possess unlawfully taken protected species. PETA's claims against Lowe relate only to four lions identified as Amelia (recently deceased), Leo, Nala, and Kahari (deceased on or around August 30, 2020). *See*, doc. no. 467, at 3. With respect to its claims against Lowe, PETA seeks declaratory and injunctive relief.

On November 29, 2021, the court determined that limited retrospective relief should be ordered by default as to Lowe, and it declared, pursuant to Rule 16(f), Fed. R. Civ. P., that Lowe's past acts with respect to the four lions violated the ESA and its implementing regulations. The court stated that this determination would be included in the final judgment to be entered in this action. The court set a bench trial on the remaining claims for February 2, 2022. As subsequently stated by the court in an order filed December 16, 2021, the purpose of the bench trial was "to afford the court and the parties an opportunity to tie up all loose ends in this case, whether those loose ends may be issues of fact or law, to the end that this matter may promptly be brought to a conclusion in this court with entry of a final judgment." Doc. no. 473.

On February 2, 2022, the court conducted the bench trial, with PETA appearing and Lowe not appearing. PETA presented its case with testimony of witnesses (Joyce Thompson, DVM, Jay Pratte, Jennifer Conrad, DVM, and Dr. Joe Keiper) and admission of exhibits (1-84). The court, with the benefit of the evidence and argument presented by PETA and based upon the record in the case, enters the following findings of fact and conclusions of law with respect to PETA's claims against Lowe in the first amended complaint (Count II and Count III):

## I. FINDINGS OF FACT

1. On July 14, 2021, the court granted the motion of Lowe's counsel of record, Daniel J. Card, to withdraw from representation in this action, and directed Lowe "to engage replacement counsel, with such counsel to file an entry of appearance within fourteen days of the date of entry of [the] order;" and, in the alternative, stated that Lowe "may file a *pro se* entry of appearance within fourteen days of the date of [the] order." Doc. no. 459, at 1. The order further gave notice that failure to comply "may result in motions or claims being adjudicated against [Lowe]." *Id.*

2. Lowe received notice of the court's July 14, 2021 order through service effected by Mr. Card. *See*, doc. no. 465; doc. no. 468, at 2.

3. On September 27, 2021, the court entered an order denying PETA's motion for summary judgment as to the claims against Lowe. *See*, doc. no. 467.[2] In its order, the court determined that there was no longer any basis for the court to declare that Lowe "continues to violate" the ESA and its implementing regulations in relation to the four lions because the four lions, pursuant to orders of the Indiana court, had been transferred to The Wild Animal Sanctuary (TWAS) and thus were no longer in Lowe's possession. The court concluded that "the only request for declaratory relief which remains in play is PETA's request for a declaration that Lowe's past conduct with respect to the four lions violated the ESA and its implementing regulations." Doc. no. 467, at 4. And the court found PETA had not carried its burden to show there was no genuine dispute that Lowe's alleged past conduct with respect to the four lions violated the ESA and implementing relief. *Id.*, at 5. As for injunctive relief, the court noted that PETA asked to enjoin Lowe from "further unlawful takes" against the four lions. *Id.*, at 4. Because the four lions were

---

[2] Lowe had been represented by counsel with respect to the summary judgment briefing.

3

no longer in Lowe's possession, the court concluded that there was no longer any basis for the requested injunction. Further, based upon PETA's summary judgment briefing, the court concluded that PETA was foregoing any other request for permanent injunctive relief with respect to Lowe. *Id*., at 4-5.

**4.** On September 27, 2021, the court additionally entered an order determining that Lowe had failed to comply with the court's July 14, 2021 order. *See*, doc. no. 468, at 1-2. The court found Lowe had failed to move for an extension of time to comply with the order, and he had "offered no reasons for his non-compliance or otherwise communicated with the court." *Id.*, at 2. After reviewing the factors for determining whether default judgment may be entered against a defendant who fails to obtain new counsel or enter an appearance *pro se*, the court advised that it was "considering entering a default judgment against Lowe under Rule 16(f), Fed. R. Civ. P., on the claim for relief which most clearly remains in dispute, specifically, PETA's claim that it is entitled to a declaration that Lowe's past acts with respect to the lions identified as Amelia, Leo, Nala and Kahari violated the Endangered Species Act and its implementing regulations." *Id.*, at 4. It stated it appeared that "the other relief sought by PETA may either be moot (because the lions have been moved to a sanctuary) or is purely hypothetical." *Id*. The court set "[a] hearing for the purpose of considering a default judgment" for November 29, 2021. *Id.* Lowe received notice of the court's September 27, 2021 order through service effected by Mr. Card. *See*, doc. no. 469.

**5.** The court conducted a hearing on November 29, 2021, in accordance with the September 27, 2021 order. *See*, doc. no. 471. Lowe did not appear at the hearing. The court took judicial notice of cases in this district in which Lowe was a party or had been ordered to appear, or in which entities controlled by Lowe were parties or had been ordered to appear, and took judicial notice of certain documents in those cases showing that Lowe had failed to comply with court orders that

required entries of appearance of counsel, such that the cases languished and could not proceed for substantial periods of time, causing interference with the judicial process. *See*, Big Cat Rescue Corp. v. G.W. Exotic Animal Memorial Foundation, Case no. CIV-14-377-SLP (W.D. Okla.) (Lowe defied orders to obtain an entry of appearance for new counsel, stalling the case and delaying for years contempt proceedings that had been set against him), and Big Cat Rescue Corp. v. Schreibvogel, Case no. CIV-16-155-SLP (W.D. Okla.) (The Honorable Scott Palk entered a default against Greater Wynnewood Development Group, LLC, an entity controlled by Lowe, after the entity had failed to obtain new counsel or respond to court orders for more than two years.)  The court further took judicial notice of docket entries (doc. nos. 81, 83, 93, 106, 137) in an Eastern District of Oklahoma case, United States v. Lowe, *et al.*, Case no. 6:20-cv-00423-JFH (E.D. Okla.), which showed Lowe failed to comply with court orders.  The court found Lowe's failure to secure an entry of appearance or enter a *pro se* entry of appearance in this action, as required by court order, was consistent with his conduct in the other Oklahoma federal district court cases.

**6.**     The court determined that Lowe's failure to appear in this action as ordered was culpable and strategic, and supported a determination that the failure to appear, or offer any explanation or excuse for the failure to do so, was done intentionally to disrupt the proceedings, and did disrupt and substantially interfere with the proceedings.

**7.**     At the November 29, 2021 hearing, the court determined that limited retrospective relief should be ordered by default as to Lowe, and it declared, pursuant to Rule 16(f), Fed. R. Civ. P., that Lowe's past acts with respect to the lions identified as Amelia, Leo Nala and Kahari violated the ESA and its implementing regulations. *See*, doc. no. 471.  Though the court declared that Lowe's past acts violated the ESA and its implementing regulations, that declaration did not contain findings of fact or

conclusions of law relating to the specific acts of Lowe that violated the ESA and its implementing regulations. Those are established below.

**8.** Lowe took possession of four lions or "Big Cats," Amelia, Leo, Nala, and Kahari, on August 12, 2019, shortly after their births. Pursuant to orders of the Indiana court, Amelia, Leo, and Nala were transferred to TWAS on September 21, 2020. They had been in Lowe's possession approximately 13 months. Kahari was not transferred to TWAS as she died on or around August 30, 2020.

**9.** Lowe denied the four lions adequate nutrition. During the first four months he possessed the lions, Lowe fed the lions a diet consisting exclusively of commercial Kitten Milk Replacer used for domestic cats. This diet lacked the necessary nutrients for the lions and was not a sufficient substitute for a mother lion's milk or for a species-appropriate weaning process. After the lions transitioned to eating meat, Lowe fed them rancid, nutrient-deficient meat, which was their only food source.

**10.** Lowe's failure to provide adequate nutrition to the lions was a cause of painful, injurious bone deformities, injuries to the lions' growth and immune systems, and other preventable injuries documented in the lions' medical records.

**11.** A basic aspect of Big Cat husbandry in hot, swampy climates is the prevention of fly-strike—a self-perpetuating condition in which flies, seeking blood and tissue, bite and penetrate the skin of an animal, and lay eggs, which hatch maggots which start eating the animal's flesh.

**12.** Lowe failed to take readily-available and cost-effective measures to control or mitigate fly-strike. Lowe also exacerbated the problem of fly-strike by leaving carcasses of recently-deceased Big Cats in the open air near the four lions and having no fly traps.

**13.** Medical records show that Amelia, Leo, Nala, and Kahari all suffered from fly-strike, which resulted in long-term, painful wounds and injuries.

**14.** Generally accepted animal husbandry practices include the provision of sufficient shelter and enrichment that allows, encourages, and promotes species-appropriate behaviors.

**15.** Lowe failed to provide adequate enclosures or adequate enrichment for the lions. He placed them in small, virtually barren enclosures which lacked sufficient environmental features, shelters, or enhancements designed to encourage species-appropriate behaviors. This caused Amelia to suffer a bite wound that was either self-inflicted or from one of other the three lions, causing Amelia to undergo amputation of one of her knuckles. It also caused Nala to suffer an injury from an ingrown claw, because she did not have an environment that allowed her to hone her claws.

**16.** Lowe failed to provide adequate enrichment for the lions. Specifically, he failed to provide them with adequate enrichment items or an adequate rotation of enrichment items; he provided enrichment items that were affirmatively dangerous; and he failed to monitor the safety and effectiveness of the enrichment items that were provided the lions, all creating a likelihood of injury.

**17.** SARS-CoV-2, the virus that causes COVID-19 in humans, poses a fatal risk to lions. Lowe failed to follow industry guidance regarding personal protective equipment for members of the public and staff, failed to follow industry guidance regarding public and staff access to the lions, failed to follow industry guidance regarding public crowding of the lions, and failed to have adequate staff monitoring of the lions' enclosures. These failures exposed the four lions to a high degree of infection risk from SARS-CoV-2.

**18.** Lowe's failure to protect the lions from infectious conditions injured Nala, who developed multiple painful respiratory infections in June 2020.

**19.** Lowe failed to have adequate staff monitoring the lions' enclosures, causing painful injury to Nala. Because of a lack of adequate staff monitoring, Nala

ingested inedible foreign objects, including one fed to her by a member of the public in March 2020.

20.     The only veterinarian to treat the lions while they were in Lowe's possession had no training or experience in the care of exotic animals, including lions.

21.     The veterinary care the lions received failed to sufficiently address documented and likely injuries of the lions.

22.     The lions were not given necessary vaccinations for canine distemper, a typically fatal condition.

23.     The lions were provided inappropriate medications, and medications at inappropriate dosages.

24.     During a June 2020 inspection, the United States Department of Agriculture discovered Nala to be so injured—lethargic, immobile, with green discharge from her eyes, purulent nasal discharge, and difficulty breathing—that she required emergency veterinary care, which Lowe had made no prior effort to provide.

25.     Nala was subsequently diagnosed with *E. coli* and Beta-haemolytic streptococcal infections.  Lowe had failed to provide adequate veterinary care to treat these infections.

26.     Lowe failed to provide adequate veterinary care to treat the swollen, ingrown claw on Nala's paw.  This painful, but readily-addressable, condition persisted until after Nala's transfer to TWAS.

27.     Lowe failed to address with adequate veterinary care many painful skeletal fractures and malformations, compressions, and lesions experienced by Nala. These readily-addressable conditions persisted until after Nala's transfer to TWAS.

28. Lowe failed to provide adequate veterinary care to treat Amelia, Leo, and Kahari for whipworms, despite their exposure to the same environmental conditions as Nala, who was discovered to have whipworms.

29. Lowe failed to perform necropsies on other lions, tigers, or hybrids thereof in his possession who died of uncertain causes. Necropsies are a crucial component of adequate preventive veterinary care in such circumstances.

30. Kahari did not receive any veterinary care from June 16, 2020, until her death on or around August 30, 2020.

31. Lowe covered up the cause of Kahari's death, did not disclose the fact of her death until at least weeks after the fact despite being subject to an applicable discovery order of the Indiana court and participating in a status conference on the logistics of the lions' transfer, and made false statements of fact to the Indiana court about the circumstances of her death.

32. Lowe represented to the Indiana court that Kahari was found dead on August 31, 2020, and that she died at the earliest some time after late afternoon the prior day.

33. For reasons including the size of insects found on Kahari's body during her necropsy, Kahari did not die at the approximate date and time Lowe reported.

34. Although Lowe claimed a break-in occurred at his facility and that Kahari was poisoned during the break in, the evidence establishes that Kahari was not poisoned during such a break-in, or at all.

35. Because Lowe delayed in securing a necropsy on Kahari, and neglected to take any measures that he was on notice were necessary to preserve Kahari's body for a necropsy and ensure the effectiveness of any necropsy, Lowe undermined the effectiveness of the necropsy subsequently performed on Kahari.

36. Kahari's welfare was of central importance to PETA's decision to join Lowe in this action.

**37.** Lowe has made it impossible for the court to determine the precise cause of Kahari's death—whether contaminated or otherwise deficient food, failure to treat a medical crisis, or any of the myriad other potential causes supported by evidence presented by PETA during the pendency of this action.

**38.** On July 14, 2021, this court ordered, consistent with Rule 7-1 of the Local Rules for the United States District Court for the Southern District of Indiana and LCvR7.1(g), that, should Lowe desire to respond to evidence attached to docket entries 440, 441, and 442, and PETA's arguments regarding the same, he was required to do so by August 11, 2021.  *See*, doc. no. 457, at 2.

**39.** Lowe did not respond to the evidence attached to docket entries 440, 441, 442 by the deadline August 11, 2021, or at any time before the trial set in this action.

**40.** Lowe did not appear at the bench trial held on February 2, 2022 to challenge any of the evidence provided by PETA.

## II.    CONCLUSIONS OF LAW

**1.** As previously determined in this action, all lions, regardless of subspecies, hybrid status, or captive status, are fully protected under the ESA. *See,* doc. no. 414, at 6-7; *see also*, 50 C.F.R. §§ 17.11(h), 17.40(r); United States v. Lowe, No. 20-CV-0423-JFH, 2021 WL 149838, at *4-5 (E.D. Okla. Jan. 15, 2021); PETA v. Tri-State Zoological Park of W. Maryland, Inc., No. 1:17-CV-02148-PX, 2018 WL 5761689, at *5 (D. Md. Nov. 1, 2018).

**2.** As previously determined in this action, it is unlawful under the ESA for any person to "take" any protected species. *See*, doc. no. 378, at 15-16 (citing Tennessee Valley Authority v. Hill, 437 U.S. 174, at 184 (1978); Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 690-91 (1995)); *see also*, 16 U.S.C. § 1538(a)(1)(B); 50 C.F.R. §§ 17.21(c), 17.31(a), 17.40(r).

3. The ESA defines "take" to mean any actions that "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." Doc. no. 378, at 15-16 (citing 16 U.S.C. § 1532); Strahan v. Coxe, 127 F.3d 155, 162 (1st Cir. 1997)). "'Harass' means 'an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns [including] breeding, feeding, or sheltering,'" id. (citing 50 C.F.R. § 17.3), subject to exemptions that do not apply here. "'Harm' means any act 'which actually kills or injures wildlife.'" Id. "'Wound' means to inflict a physical injury." Id. (citing Graham v. San Antonio Zoological Society, 261 F.Supp.3d 711, 741 n.15 (W.D. Tex. 2017)).

4. It is also unlawful under the ESA for any person to "possess, sell, carry, deliver, transport, or ship, by any means whatsoever" any protected species taken in violation of the ESA. 16 U.S.C. § 1538(a)(1)(D); *see also*, 50 C.F.R. §§ 17.21(d), 17.31(a), 17.40(r).

5. Lowe's failure to comply with the court's July 14, 2021 order was willful, culpable, strategic, and was intended to disrupt this litigation, and to interfere with and prevent findings of fact and conclusions of law from being entered with respect to him under the ESA and its implementing regulations, and his willful conduct did interfere substantially in the judicial process. Ocelot Oil Corp. v. Sparrow Industries, 847 F.2d 1458, 1465-1466 (10th Cir. 1988); Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992); Derma Pen, LLC v. 4EverYoung Limited, 736 Fed. Appx. 741, 745-46 (10th Cir. 2018). Lowe's willful disobedience supports entry of a default judgment against him under Rule 16(f), Fed. R. Civ. P., and Ocelot Oil Corp., Ehrenhaus, and Derma Pen, LLC, *supra.* The court therefore exercises its authority under Rule 16(f), Fed. R. Civ. P., to find and determine findings of fact and conclusions of law, which are supported by the record in this action, including the facts set out in PETA's motion for summary judgment and

reply, the facts deemed admitted by Lowe for failure to respond to the supplementary evidence PETA submitted in docket entries 440, 441, and 442, and PETA's arguments regarding the same, to which he was required to respond by August 11, 2021, but failed to do, and the facts established by PETA at the bench trial, which Lowe, by failing to appear, did not challenge.

**6.** Lowe did not respond to the evidence as required by this court's order and he did not respond to the evidence at the bench trial, of which he was duly notified. Based upon the evidence in the record, the court concludes that Lowe covered up and made false statements of fact to the Indiana court about Kahari's death.

**7.** Lowe spoliated evidence of the precise cause of Kahari's death, further justifying an adverse inference that her death resulted from his mistreatment and otherwise deficient care.

**8.** Lowe harmed and harassed all four lions within the meaning of the ESA and its implementing regulations by feeding them a diet consisting exclusively of commercial Kitten Milk Replacer during the first four months of his possession of the lions.

**9.** Lowe harmed and harassed all four lions within the meaning of the ESA and its implementing regulations by feeding the lions rancid, nutrient-deficient meat as their only food source.

**10.** Lowe wounded, harmed, and harassed all four lions within the meaning of the ESA and its implementing regulations by failing to take readily-available measures to control or mitigate fly-strike at his facility, and by taking actions that exacerbated the problem of fly-strike at his facility.

**11.** Lowe harassed all four lions within the meaning of the ESA and its implementing regulations, and wounded, harmed, and harassed Nala and Amelia

within the meaning of the ESA and its implementing regulations by failing to provide adequate enclosures or enrichment.

12. Lowe harassed all four lions within the meaning of the ESA and its implementing regulations by failing to provide the four lions adequate enrichment items or an adequate rotation of enrichment items, by providing enrichment items that were affirmatively dangerous, and by failing to monitor the safety or effectiveness of enrichment items provided the lions, all creating a likelihood of injury to them.

13. Lowe harassed all four lions within the meaning of the ESA and its implementing regulations by failing to follow industry guidance regarding personal protective equipment for members of the public and staff, failing to follow industry guidance regarding public and staff access to these lions, failing to follow industry guidance regarding public crowding of these lions, and failing to have adequate staff monitoring of these lions' enclosures, exposing all four lions to a high degree of infection risk from SARS-CoV-2.

14. Lowe's failures to protect the lions from potential infection harmed Nala within the meaning of the ESA and its implementing regulations as she developed multiple painful respiratory infections in June 2020.

15. Lowe's failure to have adequate staff monitoring of these lions' enclosures harmed Nala within the meaning of the ESA and its implementing regulations as she ingested inedible foreign objects, including one fed to her by a member of the public in March 2020.

16. Lowe harmed and harassed all four lions within the meaning of the ESA and its implementing regulations by failing to obtain the services of a veterinarian with sufficient training or experience in the care of lions. Specifically, the veterinary care provided by Lowe harmed and harassed these lions within the meaning of the ESA and its implementing regulations by failing to sufficiently address documented

fly-strike, infectious conditions, and other documented injuries and conditions, and it harassed the lions within the meaning of the ESA and its implementing regulations by exposing the lions to unacceptable risk from canine distemper, a typically fatal condition for which they were not vaccinated, from provision of inappropriate medications and medications at inappropriate dosages, and by failing to have necropsies conducted on other lions, tigers, and hybrids thereof who died of uncertain causes while the lions were in Lowe's possession.

17. Because of Mr. Lowe's false statements of fact to the Indiana court and the acts and omissions that created a failure to allow for effective post-mortem testing, and a failure to provide timely discovery concerning Kahari's death, this court takes as established that Lowe's acts and omissions described above—including his provision of inadequate diets and inadequate veterinary care—killed Kahari within the meaning of the ESA and its implementing regulations.

18. PETA is entitled to judgment declaring that Lowe's past acts with respect to the lions identified as Amelia, Leo, Nala and Kahari, as set forth in these findings of fact and conclusions of law, violated the ESA and its implementing regulations.

19. Because Lowe is determined to have violated the ESA and its implementing regulations, Lowe is bound by 16 U.S.C. § 1538(a)(1)(D) and 50 C.F.R. §§ 17.21(d), 17.31(a), 17.40(r), and is thus barred from possessing, selling, delivering, carrying, transporting, or shipping, by any means whatsoever, Leo and Nala, and the remains of Amelia and Kahari.

20. In accordance with the court's prior order (doc. no. 467), and because Lowe is no longer in possession of the lions, PETA is not entitled to any relief against Lowe based upon Lowe continuing to violate the ESA and its implementing regulations as alleged in the first amended complaint. PETA's claims in the first

amended complaint seeking relief based on Lowe's continuing to violate the ESA and its implementing regulations are **DISMISSED WITHOUT PREJUDICE**.

## CONCLUSION

PETA has established, as a matter of fact and as a matter of law, that it is entitled to substantial relief against Mr. Lowe under the Endangered Species Act. The evidence before the court convincingly establishes that Jeffrey Lowe treated the four lions directly involved in this case, Amelia, Leo, Nala and Kahari, with appalling cruelty.  Judgment will accordingly be entered in favor of PETA and against Mr. Lowe.

As stated during the bench trial,  PETA is granted an extension, until 30 days after entry of final judgment, to file a statutory bill of costs, under Title 28 or under the ESA, and to file a motion for attorneys' fees.

Dated this 25th day of February, 2022.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-0671p012.docx